132 So.2d 32 (1961)
Frederick T. RANK and J. Graydon Rank, Appellants,
v.
Bart E. SULLIVAN, Executor for the Estate of Gertrude P. Rank, Robert F. Sullivan, Mrs. Robert Faulkner and Mrs. Maybelle Pulling, Appellees.
No. 1821.
District Court of Appeal of Florida. Second District.
June 28, 1961.
Zokvic, Dougherty & Carrier, Miami, for appellants.
Buckley & Bland, Ft. Lauderdale, for appellees.
KANNER, Judge.
Frederick T. Rank and J. Graydon Rank, beneficiaries under the will of Gertrude P. *33 Rank, brought suit under the declaratory proceeding statute. Bart E. Sullivan as executor of the estate of deceased and Robert F. Sullivan, who had been associated with her in certain business ventures, together with Mrs. Robert Faulkner and Mrs. Maybelle Pulling, also beneficiaries under the will, were named as defendants. The object of the suit was to procure a declaration of rights of the parties under the will, under a stock purchase agreement, and under articles of partnership.
For that purpose interpretation was sought as to the will wherein the testatrix called her executor's attention to an agreement with Robert F. Sullivan, giving him an option to purchase her interest in four corporations, Sullivan Construction Co., Inc., Cove Realty of North Broward County, Inc., North Broward Land Co., Inc., and Tamarind Land Co., Inc., and to purchase her interest in a partnership in Tidewater Development Company upon her death.[1] Interpretation was also sought with reference to a stock purchase agreement between deceased and Robert F. Sullivan giving him an option to purchase stock of the decedent in Cove Realty of Broward County, Inc., and North Broward Land Co., Inc.,[2] and a provision of the articles of partnership of Tidewater Development Company giving Robert F. Sullivan an option to purchase decedent's interest in the partnership.[3]
*34 The petition prayed for an adjudication of the questions, (1) whether Robert F. Sullivan had timely exercised his options, (2) whether, in the event the court ruled that the options had not been timely exercised, the executor could bind the estate by acceptance of payments under the expired options, and (3) what interest, if any, the estate of Gertrude P. Rank had in the two corporations, Tamarind Land Co., Inc., and Sullivan Construction Co., Inc.
Gertrude P. Rank died February 9, 1956. Her will was admitted to probate and letters testamentary were issued to the executor February 21, 1956. Robert F. Sullivan gave written notices of intention to exercise the written options on March 5, 1956, and paid the first installment on the options on July 18, 1957. He also paid to the executor a certain amount as decedent's share of profit from the operation of Sullivan Construction Co., Inc., to the date of her death. The executor accepted these payments on behalf of the estate.
The chancellor found that Robert F. Sullivan had properly exercised his written options and that time was not of the essence in the payment of installments due. He found that the giving of written notice of acceptance resulted in the formation of a bi-lateral contract and held that, whether or not time was of the essence, the executor, acting within his power, having accepted the first installment, so bound the estate. It was further found from the written statement in the will and from other evidence that Robert F. Sullivan had an enforceable oral option with Gertrude P. Rank as to the Tamarind Land Co., Inc., which he held had been properly exercised by the giving of oral notice. Again, the court held that the result was the formation of a bi-lateral contract; that time was not of the essence in payment of installments due; and, whether or not time was of the essence, the executor, acting within his power, having accepted the first installment, so bound the estate. Next, the chancellor found that the deceased had no interest in Sullivan Construction Co., Inc., but that she had been entitled under an oral agreement to receive during her lifetime one half of the net profits from sales of the fourth section of the Cove made before her death; and he also found that Robert F. Sullivan had paid the executor a certain amount in satisfaction of this obligation.
Points brought before this court on the appeal assert (1) that Robert F. Sullivan did not make timely and effectual exercise of his written options to purchase decedent's interest in Cove Realty of Broward County, Inc., North Broward Land Co., Inc., and Tidewater Development Company, and that decedent's estate was not bound by those options; (2) that he did not have or make timely and effectual exercise of an oral option to purchase decedent's interest in Tamarind Land Co., Inc., and that decedent's estate was not bound thereby; (3) that the estate of Gertrude P. Rank was entitled to an equal share of the net profits from sales of the fourth section of the Cove made by Sullivan Construction Co., Inc., after her death.
Under the first point, the appellants, not disputing that Robert F. Sullivan delivered written notices of intention to exercise his written options by the time specified, assert that he was required to make the first of the fifteen annual installments by March 5, 1957; and that, since he did not do so until *35 July 18, 1957, this was too late to effectuate his exercise of options under the stock purchase agreement and the articles of copartnership.
It is rudimentary that a contract will be construed according to its own clear, plain, and unambiguous terms. 7 Fla.Jur., Contracts, section 74, page 137. From a perusal of the stock purchase agreement, it is immediately discernible that the condition precedent to the exercise by Robert F. Sullivan of his option was thus expressed:
"* * * it shall be encumbered upon him to notify in writing the representative of the estate of Rank of his intention to purchase the stock of Rank in both corporations within thirty days after the appointment of the representative of said estate of Rank. * * *"
Then it is provided that in the event Sullivan "exercises his option to purchase as aforesaid, he shall have the privilege of paying for the same in annual installments over a period of fifteen years without interest." (Emphasis supplied.) Similarly, in the articles of co-partnership, it is seen that "If the surviving partner elects to purchase the decedent's interest, he shall serve notice in writing of such election, within three months after the death of the decedent * * *". Under subsection (a) of that provision, the details of what shall constitute the purchase price are given, together with the stipulation that such purchase price shall be paid without interest in fifteen annual installments, the first installment to be due and payable one year after the end of the calendar month in which the decedent's death occurred. In neither agreement is it specified that the initial payment of one-fifteenth of the purchase price or any of the installment payments is a condition which Robert F. Sullivan was required to fulfill before he effectually could exercise his option.
If, by the express terms of the option instrument, payment of the purchase price or a part of it is required to accompany the optionee's election to exercise the option, then the making of the payment specified or the tender of it is necessary as a condition precedent to formation of the contract, unless waived by the optionor. In contrast, the terms of the option instrument may require merely that notice be given of the exercise of the option and may not require the payment of purchase money in order that it be exercised. In such instance, payment of the purchase price is generally considered as an obligation which the optionee must meet in order to perform a contract to sell which was previously made and is not a condition precedent to formation of the contract. Whether or not payment of purchase money is required as a condition precedent to exercise of an option is a matter of intent of the parties as it may be gleaned from a construction of the particular option instrument involved. 55 Am. Jur., Vendor and Purchaser, section 41, p. 511; Vol. 1, Corbin on Contracts, section 273, pp. 913-920; Vol. 3, Williston on Contracts, section 853, p. 2389; Annotation, 101 A.L.R. 1432, at 1433. When, in accordance with its terms, an option has been timely accepted or the election to exercise the option made, the option thereupon may result in a bi-lateral contract, with mutuality of obligation and remedy. 91 C.J.S. Vendor & Purchaser § 13, p. 863; 55 Am.Jur., Vendor and Purchaser, section 43, p. 514. We conclude, as did the chancellor, that Robert F. Sullivan, by the giving of the specified notice, properly exercised his written options and through this exercise converted those written options into bi-lateral contracts.
With reference to appellants' point two, the chancellor found that Robert F. Sullivan had no written option agreement for the purchase of the deceased's interest in Tamarind Land Co., Inc.; but based upon the statement in the will and other evidence adduced, he determined that Sullivan had an enforceable oral option. The notice to exercise the option was transmitted orally. Unless a statute or the option contract itself requires a written acceptance *36 or exercise, the option may be exercised or accepted orally. There is no statute on this in Florida. 91 C.J.S. Vendor & Purchaser § 10(b), p. 855; Kottler v. Martin, 1955, 241 N.C. 369, 85 S.E.2d 314; Duprey v. Donahoe, 1958, 52 Wash.2d 129, 323 P.2d 903. The same determination made by the chancellor as to the written options was rendered as to the Tamarind company oral option.
Appellants urge that the statute of frauds, section 725.02, Florida Statutes, F.S.A., relating to contracts to sell personalty, makes the oral contract here unenforceable.[4] A memorandum that is adequate to satisfy the requisites of the statute may be in almost any possible form. A will may constitute a sufficient memorandum of an antecedent contract. The statement in the will suffices as a memorandum in writing to satisfy the statute as to the oral option agreement. Vol. 2, Corbin on Contracts, section 509, p. 734; 37 C.J.S. Frauds, Statute of § 176, p. 654; 15 Fla.Jur., Frauds, Statute of, section 9, p. 14. We find the chancellor's ruling with respect to the oral option agreement to be without error.
Further, in regard to appellants' contention that the failure to pay the first installments when due in March, 1957, rendered the options ineffectual, there is evidence that this was occasioned because of delay by the estate's personal representative in approving the value of decedent's interest from which computation of the installment amounts could be made. It was not until June, 1957, that the personal representative directed his accountant to examine the financial statement submitted by the accountants who kept the books of the corporations and partnership involved; and shortly thereafter, on July 18, 1957, he accepted the first installment payments. Robert F. Sullivan has since that time made the annual installment payments as they have become due, and these have been accepted. No circumstances of impropriety or wrong motive have been shown. As we have said, the options were timely exercised and we view the payment acceptance by the executor as waiver of the breach in making the initial installment payment when due under the contracts.
Additionally, we may observe that in paragraph seven of the will, the testatrix stipulated the broad authority to be vested in her executor, saying, "* * * I expressly confer upon my Executor full authority and power to sell any part of my estate at public or private sale with or without notice as he may deem best and without any Order of Court." By this language the executor would be enabled in his judgment to sell the properties involved. See Section 733.22, Florida Statutes, F.S.A.
With respect to point three, the interest of decedent in Sullivan Construction Co., Inc., extended only to profits from sales of lots in the fourth section of the Cove. Appellants' contention is that the estate of deceased is entitled to an equal share of the net profits from the sales made subsequent to her death. The chancellor held otherwise, finding that the interest was deemed to have terminated upon the death of Gertrude P. Rank. The testimony supports the chancellor's determination.
Appellants in their brief question the admission of some testimony relating to the oral option and to profits from sales of lots of the fourth section of the Cove as in violation of the Dead Man's Statute, section 90.05, Florida Statutes, F.S.A. We shall not pursue this, since there is no assignment *37 of error to raise the point. Rule 3.5(c), Florida Appellate Rules, 31 F.S.A., provides that the assignments of errors must point out clearly and distinctly all alleged errors that are relied on for reversal. If the alleged errors are based upon orders, evidence, or charges, such matters must be specifically referred to. See Redditt v. State, Fla. 1955, 84 So.2d 317; McCann Plumbing Co. v. Plumbing Industry Program, Fla.App. 1958, 105 So.2d 26.
The decree of the chancellor accords with the evidence. We shall not disturb it.
Affirmed.
ALLEN, C.J., and SANDLER, HARRY N., Associate Judge, concur.
NOTES
[1] call to the attention of my Executor, hereinafter named, that I have entered into an Agreement with Robert F. Sullivan by which the said Robert F. Sullivan has an option, in the event of my decease, to purchase my interest in the following corporations:
 Sullivan Construction Co., Inc.
 Cove Realty of Broward County, Inc.
 North Broward Land Company, Inc.
 Tamarind Land Co., Inc.
as well as my interest in the partnership known as the
Tidewater Development Company
for the book value of my interest in said corporations and partnership at the time of my decease, payable in annual installments over a period of fifteen (15) years without interest. In the event Robert F. Sullivan exercises his option to purchase my interest in the aforementioned corporations and partnership, the proceeds of the same shall pass under the residuary clause of my Will. I direct the representative of my estate, hereinafter named, to comply with the terms of said Agreement.
"VII
"I hereby nominate and appoint Bart E. Sullivan of Pompano Beach, Florida, Executor of this, My Last Will and Testament, and I request that he be exempt from furnishing any bond, as such, I expressly confer upon my Executor full authority and power to sell any part of my estate at public or private sale with or without notice as he may deem best and without any Order of Court."
[2] "5. In the event of the death of Rank, Sullivan shall have the privilege of purchasing the stock of Rank in both corporations from the estate of Rank at the book value as of the date of death of Rank. In the event Sullivan should intend to exercise his privilege of purchasing said stock, it shall be encumbered upon him to notify in writing the representative of the estate of Rank of his intention to purchase the stock of Rank in both corporations within thirty days after the appointment of the representative of said estate of Rank. The said notice may be given by mail. In the event that Sullivan exercises his option to purchase as aforesaid, he shall have the privilege of paying for the same in annual installments over a period of fifteen years, without interest."
[3] "10. Upon the death of either partner, the surviving partner shall have the right either to purchase the interest of the decedent in the partnership or to terminate and liquidate the partnership business. If the surviving partner elects to purchase the decedent's interest, he shall serve notice in writing of such election, within three months after the death of the decedent, upon the executor or administrator of the decedent, or, if at the time of such election no legal representative has been appointed, upon any one of the known legal heirs of the decedent at the last known address of such heir.

"(a) If the surviving partner elects to purchase the interest of the decedent in the partnership, the purchase price shall be equal to the decedent's capital account on the date of his death as shown on the partnership books, increased by his share of partnership profits or decreased by his share of partnership losses for the period from the beginning of the fiscal year in which his death occurred until the end of the calendar month in which his death occurred. No allowance shall be made for good will, trade name, patents or other intangible assets, except as those assets have been reflected on the partnership books immediately prior to the decedent's death; but the surviving partner shall nevertheless be entitled to use the trade name of the partnership. The purchase price shall be paid without interest in fifteen annual installments, the first installment to be due and payable one year after the end of the calendar month in which the decedent's death occurred."
[4] "725.02 Contracts to sell personalty. No contract for the sale of any personal property, goods, wares or merchandise shall be good, unless the buyer shall accept the goods (or part of them) so sold and actually receive the same, or give something in earnest to bind the bargain or in part payment, or some note or memorandum in writing of the said bargain or contract be made and signed by the parties to be charged by such contract, or their agents thereunto lawfully authorized."